IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYSHON THOMPSON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 25-CV-1764** |
| | : | |
| THE MEET GROUP, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**SCOTT, J.**                                                                                   **MARCH 16, 2026**

Tyshon Thompson filed this *pro se* civil action against the Meet Group, Inc. and IFWE, Inc., owners of the social media platform "Tagged," after his account was deactivated. Before the Court is Defendants' Motion to Dismiss, Thompsons's Response in Opposition, and Defendants' Reply. For the following reasons, the Motion to Dismiss will be granted.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Thompson alleges that on March 31, 2025, Defendants deactivated his Tagged "live streaming" account. (Am. Compl. at 3-4.) He claims that the deactivation was based on "illegal enforcement of the 'Terms of Service'" and that he did not agree to the Terms of Service. (*Id*. at 3.) Thompson states that Defendants "stole" or "embezzled" $10,000 as well as "digital content, property, and footprint." (*Id*.) Thompson alleges injuries to his social networking career and that he suffers from stress, depression, and anxiety as a result of Defendants' actions. (*Id*. at 4.) Based on these allegations, Thompson asserts "fraud/embezzlement" claims against Defendants and seeks restoration of his "stolen digital property," reactivation of his Tagged account, and

---

[1] Unless otherwise noted, the factual allegations are taken from the Amended Complaint (ECF No. 17). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

money damages.[2]  (*Id*. at 4.)

The Court previously granted Thompson leave to proceed *in forma pauperis* and directed the service of his Complaint.  (ECF No. 6.)  Shortly after Defendants filed a Motion to Dismiss the Complaint (ECF No. 11), Thompson filed an Amended Complaint (ECF No. 17).  Defendants filed a Motion to Dismiss the Amended Complaint.  (ECF No. 18), to which Thompson filed a Response (ECF No. 22), and Defendants filed a Reply (ECF No. 25).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp*., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the

---

[2] The Court has diversity jurisdiction over this matter, as Thompson alleges that he is a citizen of Illinois and Defendants are citizens of Pennsylvania.  (Am. Compl. at 1-2).  *See* 28 U.S.C. § 1332(a).

defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## III.    DISCUSSION

Defendants assert three arguments in support of dismissing Thompson's Amended Complaint. First, they argue that a provision of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(2)(A), provides them immunity from any claims asserted by Thompson in connection with the deactivation of his Tagged account. Second, they contend that even if Thompson's claim was not barred by CDA immunity, it should nevertheless be dismissed as not plausible because it is based on conclusory allegations that Defendants "embezzled" and "stole" from him. (*See* ECF No. 18 at 6 (arguing that Thompson's "theft/embezzlement allegation is a legal conclusion that is not entitled to an assumption of the truth").) Third, Defendants argue that Thompson expressly accepted the "Terms of Service" on the Tagged website, which

included a waiver of any claims resulting from Tagged's decision to deactivate accounts.  In his Response, Thompson addresses only the merits of Defendants' argument about CDA immunity, contending that CDA immunity does not apply to his claim because Defendants' justification for deactivating his account falls outside CDA's immunity provisions.  (ECF No. 22 at 2-4.)

Defendants first contend that 47 U.S.C. § 230(c)(2)(A) provides them immunity from any claims asserted by Thompson in connection with the deactivation of his Tagged account.  "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'"  *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).  Under the CDA's "Good Samaritan" immunity provision, which addresses the "blocking and screening of offensive material," a provider of "an interactive computer service" cannot be held liable for

> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected . . .

47 U.S.C. § 230(c)(2)(A).  Thus, under this provision, a party is entitled to immunity for causes of action arising out of the party's efforts to restrict or block online material when the party (1) is a provider or user of an "interactive computer service"; (2) acted in good faith; and (3) subjectively believed that the material blocked or restricted was "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable."  *Id.*; *Deutsch v. Microsoft Corp.*, No. 22-2904, 2023 WL 2966947, at *6 (D.N.J. Apr. 17, 2023).  The parties do not appear to dispute that Tagged (and by extension, its owner, IWFE, Inc.) qualifies as an interactive computer service.  (*See* ECF No. 18 at 5, ECF No. 22 at 2-3.)  Rather, they dispute the breadth of the immunity provided by the Good Samaritan defense and whether it grants social media

4

platforms like Tagged "sweeping" unqualified immunity for decisions to remove content or instead limits immunity to cover obscene material, as contemplated by the list of adjectives preceding the "otherwise objectionable" catchall provision in the statute.

Because CDA immunity is an affirmative defense, it is Defendants' burden to establish its applicability. *Martell v. X Corp.*, No. 23-5449, 2024 WL 3011353, at *5 (N.D. Ill. June 13, 2024). Defendants have failed to do so here. First, application of CDA immunity in this case requires assessment of facts that are not in the pleadings—such as the reason why Thompson's account was disabled and the content of Thompson's posts. Because of this, determining whether Defendants are entitled to immunity under § 230(c)(2)(A) is not appropriate at this early stage of the case. *See Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 592 (N.D. Ill. 2021) ("Because affirmative defenses such as CDA immunity frequently turn on facts not before the court at the pleading stage, dismissal is appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense."). Second, the statute makes clear that the immunity applies only for actions "voluntarily taken in good faith," and Thompson's Amended Complaint alleges facts to support a plausible inference that Defendants did not act in good faith (i.e., they "stole" his money and property) when they deactivated his Tagged account. *See, e.g.*, *Smith v. Trusted Universal Standards In Elec. Transactions, Inc.*, No. 09-4567, 2010 WL 1799456, at *7 (D.N.J. May 4, 2010) (refusing to grant § 230(c)(2)(A) immunity to claims because the pro se plaintiff alleged bad faith by Comcast in the complaint); *e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1273 (M.D. Fla. 2016) (denying defendant's motion to dismiss on the basis of CDA immunity where the plaintiff included allegations in its Second Amended Complaint that the defendant failed to act in good

faith).  Accordingly, Defendants' motion to dismiss premised on immunity under the CDA is denied.

Although CDA immunity does not require dismissal at this stage, the Court finds persuasive Defendants' second and third arguments in support of dismissing the Amended Complaint.  Defendants argue that Thompson's theft/embezzlement claim should be dismissed as not plausible because it is based on only conclusory allegations, which are not sufficient to survive dismissal under Rule 12(b)(6).  (*See* ECF No. 18 at 6 (stating that "Mr. Thompson's theft/embezzlement allegation is a legal conclusion that is not entitled to an assumption of the truth").)  The Court agrees.  Thompson asserts no factual allegations to support his claim and makes only conclusory statements that Defendants "stole" his property.  (Am. Compl. at 3.) Moreover, the nature of Thompson's claim is not clear from his sparse allegations.  He states that Defendants "stole/embezzled from [him] via the illegal enforcement of the 'Terms of Service,' which [he] did not agree to," and that "$10,000 was stolen as well as digital content, property, and footprint."  (Am. Compl. at 3.)  Thompson cites 18 U.C.S. § 641 as the federal statutory right underlying his "theft/embezzlement" claims.  (Am. Compl. at 2.)  Section 641 criminalizes embezzlement or conversion of United States government property and is clearly not applicable here.  To the extent that Thompson intends to assert a theft-like tort claim, such as conversion, the claim must be dismissed for two additional reasons.

First, it is not clear from Thompson's allegations what interest he has in the property allegedly taken by Defendants—the $10,000, "digital content, property, and footprint"—and whether his interest in that property was covered by the "Terms of Service," such that his claim is more properly construed as one for breach of contract.  In other words, to the extent that the Terms of Service governs Thompson's entitlement to the property he allegedly lost after his

6

account was deactivated, then any conversion claim Thompson asserts would be a contract claim and barred by the "gist of the action" doctrine. *See Earl v. NVR, Inc.*, 990 F.3d 310, 314-15 (3d Cir. 2021) ("The gist of the action doctrine provides that 'an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" (quoting *Dixon v. Nw. Mut.*, 146 A.3d 780, 788 (Pa. Super. Ct. 2016))); *Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) ("The gist of the action doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." (quotation omitted)).

Second, if the gist of the action doctrine does not bar his tort claim for conversion, Thompson does not otherwise allege a plausible claim. Pennsylvania law defines conversion as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 529 (E.D. Pa. 2012) (quoting *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 879 (Pa. Super. Ct. 1997)). To state a conversion claim, a plaintiff must allege that they "have an immediate right of possession of the property at the time it was allegedly converted." *Id*. Although money may be the subject of a conversion claim, the plaintiff must allege that they "had a property interest in the money at the time of the alleged conversion." *Wen v. Willis*, 117 F. Supp. 3d 673, 684 (E.D. Pa. 2015). Thompson does not allege how he had a property interest in the money allegedly "stolen" by Defendants when they deactivated his Tagged account. He does not provide any details as to how his Tagged account acquired $10,000 and what possessory interest he had in those funds when the account was

7

deactivated.  Moreover, although it is not clear what Thompson means by "digital content, property, or footprint," to the extent he describes forms of intangible property, they are not the types of property that give rise to conversion claims.  *See Peruto v. Roc Nation*, 386 F. Supp. 3d 471, 475 (E.D. Pa. 2019) (noting that digital property interests do not support a conversion claim and citing cases); *see also Eagle v. Morgan*, No. 11-4303, 2013 WL 943350, at *10 (E.D. Pa. Mar. 12, 2013) (holding that LinkedIn account is intangible property not subject to a conversion claim); *Famology.com Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589, 591 (E.D. Pa. 2001) (rejecting conversion claim for a domain name).  Accordingly, any conversion claim Thompson asserts must be dismissed.

To the extent that Thompson intends to assert a breach of contract claim against Defendants based on their "illegal enforcement of the Terms of Service," the claim must also be dismissed.  Thompson alleges that he did not agree to the Terms of Service and that Defendants enforced them illegally.  Such vague, conclusory, and somewhat contradictory allegations are not sufficient to state a breach of contract claim.  *See CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (stating that to plead a breach of contract claim, the plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages").  Moreover, Thompson does not allege any facts to support his assertion that the Terms of Service do not apply to him.  On this point, the Court finds persuasive Defendants' third argument in support of dismissal—that Thompson expressly waived any damages claims against them by agreeing to certain terms in exchange for using the social media platform.

Defendants contend that Thompson expressly accepted the "Terms of Service" on the Tagged website when he created his profile and on other occasions when he signed in to his

account.[3]  (*See* ECF No. 18 at 8 n.6.)  Defendants state that Tagged users like Thompson are prompted to accept Tagged's Terms of Service by clicking a button saying that they "Understood" or "Accept" them each time the Terms were updated and when the user opens an account.[4]  (ECF No. 18 at 8 n.6.)  The Terms of Service requires users to agree that Tagged is authorized to terminate user accounts for any reason or none at all, without being liable to the user for the account termination.  (ECF No. 18 at 24.)  The Terms of Service also contains an express disclaimer of liability for any damages, profits, data, or other intangibles resulting from a Tagged user's inability to use Tagged.  (*Id*. at 27.)  These so-called "clickwrap agreements"—"in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating, 'I agree' in order to proceed," *see Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)—have been deemed enforceable.  *See, e.g.*, *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Feldman v. Google, Inc*., 513 F. Supp. 2d 229, 236 (E.D. Pa.

_____

[3] Tagged's Terms of Service are incorporated into the Amended Complaint by reference. Thus, the Court may take judicial notice of the Terms of Service. *See Force v. Facebook, Inc*., 934 F.3d 53, 60 n.5 (2d Cir. 2019) (considering Facebook's Terms of Service in affirming district court's dismissal, where the document was relied on in complaint, incorporated by reference, and otherwise publicly available); *Tatum v. X Corp*., 733 F. Supp. 3d 453, 459, 461 (E.D.N.C. 2024) (taking judicial notice of social media platform's terms of service for purposes of deciding motion to dismiss); *Yuksel v. Twitter, Inc*., No. 22-05415, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (taking judicial notice of Twitter's terms of service for purposes of deciding motion to dismiss); *Cole v. Quest Diagnostics, Inc*., No. 23-20647, 2024 WL 3272789, at *3 (D.N.J. July 2, 2024) (taking judicial notice of defendant's "Cookie Notice" on website where the notice served as the basis of plaintiff's allegations), *opinion vacated in part on reconsideration*, No. 23-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025); *see also* Fed. R. Evid. 201(b)(2).

[4] The Terms of Service are available through a hyperlink.  *See* https://www.tagged.com/home.html (last accessed Mar. 13, 2026).

2007) ("Absent a showing of fraud, failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms."); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020) (dismissing quasi-contract claim on motion to dismiss where the plaintiff entered into a "valid clickwrap agreement" requiring the plaintiff to "affirmatively agree to" the terms); *see also DeJohn v. The .TV Corp. Int'l,* 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003) (finding internet contract terms enforceable when a webpage user had opportunity to click on hyperlinked terms and stating that the "failure to read a contract is not a get out of jail free card").

Thompson does not address Defendants' argument about the Terms of Service in his Response to Defendants' Motion to Dismiss, other than to vaguely reference the Declaration of Independence.  (*See* ECF No. 22 at 4 ("If this Court accepts the alleged agreement of the Plaintiff Mr. Thompson to the Defendants' terms of service, which the Defendants are declaring, then the Declaration of Independence, which was created 249 years ago, remains strong to this very day and was created to counsel outcomes such as what has been brought to this honorable Court.").)   In his Amended Complaint, Thompson alleges that he did not agree to the Terms of Service and that Defendants "stole/embezzled" from him through "illegal enforcement" of the Terms of Service.  (Am. Compl. at 3.)  He does not allege any facts explaining *how* he was able to use his Tagged account without agreeing to the Terms of Service or how they were allegedly enforced against him illegally.  Thompson's vague and conclusory allegations are not sufficient to state a plausible claim.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and dismiss Thompson's Amended Complaint.  However, the Court will permit Thompson an

opportunity to file a second amended complaint if he can allege facts to overcome the

deficiencies the Court noted as to his claims.  An appropriate Order follows. s

**BY THE COURT:**

/S/ Kai N. Scott
**KAI N. SCOTT, J.**
